Pennsylvania Labor Relations Board *v.* Williamsport Area School District, Appellant. Williamsport Education Association, Intervening Appellee.

Argued December 8, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Paul W. Reeder,* with him *Elliot Newman,* for appellant.

*Roger M. Simon,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, and *Forest N. Myers,* Assistant Attorney General, for appellee.

*William A. Hebe,* with him *Spencer, Gleason & Hebe,* for intervening appellee.

OPINION BY JUDGE BLATT, March 18, 1977:

In 1972, the Williamsport Area School District (District) entered into a collective bargaining agreement with the Williamsport Education Association (Association), representing the District's teachers. The contract expired on June 30, 1974 and negotiations on a new contract continued until September 6, 1974, when the teachers went on strike. On October 5, 1974, the teachers still without a contract returned to work pursuant to a court order dated October 3, 1974. On November 21, 1974, a number of the teachers received disciplinary letters for their failure to attend certain meetings which had been held after school hours. A grievance was then filed on behalf of these teachers pursuant to the grievance procedure contained in the expired contract to which the District's representative responded as follows:

I am in receipt of your memorandum of November 27, 1974 alleging a misinterpretation and misapplication of Article XXV of the 1973-74 collective bargaining Agreement. Unfortunately, that Agreement expired on June 30, 1974 and has not, at this time been replaced by a successor Agreement.

It is the position of the Williamsport Area School District that since there is now no contract between the District and the Williamsport Education Association, the District has no contractual obligation to comply with any of the provisions of any of the prior Agreements with the Williamsport Education Association. Therefore, your institution of a grievance under the former Agreement has no standing.

In my letter of November 19 to you, I did make reference to Article XXV of the former contract, but this was intended only to refer back to the time when it was the practice in

this District to require certain reasonable services and attendance after the 'regular school day' had ended. (The contractual provision to which I referred restricted such additional time to that which was practiced in the 1971-72 school year.)

Under prevailing law in Pennsylvania, and absent any contractual Agreement to the contrary, it has been held that teachers may be required to attend faculty meetings, professional conferences and any other reasonably assigned duties.

In the absence of an Agreement and, therefore, a grievance procedure, no formal action will be taken on this matter. However, I am willing to meet informally with you to discuss this matter at a mutually convenient time should you so desire.

The Association then filed unfair labor practice charges with the Pennsylvania Labor Relations Board (PLRB), which found that an unfair labor practice had been committed by the District.[1] The District then appealed to the Court of Common Pleas of Lycoming County, which affirmed the PLRB's order. This appeal followed.

The issue presented here is whether or not the District's refusal to process the grievance in accordance with the grievance procedure contained in the expired contract violated Sections 1201(a)(1) and (5) of the Public Employe Relations Act[2] (PERA), 43 P.S.

---

[1] The PLRB's decision concluded that the District had "committed an unfair practice within the meaning of Section 1201, subsection (a), clauses (1) and (5) of the [Public Employe Relations] Act," and ordered it both to cease and desist from refusing to discuss the grievance and to process it as required in the contract.

[2] Act of July 23, 1970, P.L. 563, 43 P.S. §1101.101 et seq.

§§1101.1201(a) (1) & (5), and thereby constituted an unfair labor practice by the District.

Section 1201 of PERA provides as follows:

> (a) Public employers, their agents or representatives are prohibited from:
>
> (1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.[3]
>
> . . . .
>
> (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative. (Footnote added.)

Section 701 of PERA, 43 P.S. §1101.701, provides that:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

---

[3] "It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement." Section 401 of PERA, 43 P.S. §1101.401.

Section 901 of PERA, 43 P.S. §1101.901, provides, in part, that "[o]nce an agreement is reached between the representatives of the public employes and the public employer, the agreement shall be reduced to writing and signed by the parties" and Section 903 of PERA, 43 P.S. §1101.903, provides, in part, that "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory."

It is clear that the above-cited provisions of PERA require the public employer and public employes to negotiate a contract controlling their relationship, and that they also require the inclusion of a grievance procedure in such a contract, the final step thereof being binding arbitration. *See Lincoln University of the Commonwealth System of Higher Education v. Lincoln University Chapter of the American Association of University Professors,* Pa. , 354 A.2d 576 (1976.). Because the contract between the parties here involved had expired, we believe that no grievance procedure existed on November 27, 1974 when the Association filed its grievance. The District, therefore, was not required to resolve the grievance in accordance with the procedure contained in the expired contract. Although Section 903 does require that all collective bargaining agreements contain an appropriate grievance procedure, the law does not itself establish such a procedure and we believe that here, in the absence of either a collective bargaining agreement or other interim understanding between the parties, no mechanism for the resolution of grievances existed at the time here in question.

Moreover, as in *Pennsylvania Labor Relations Board v. American Federation of State, County and Municipal Employees, AFL-CIO,* 22 Pa. Commonwealth Ct. 376, 348 A.2d 921 (1975), there has been no showing here of any interference with the em-

ployes' rights to organize and bargain, as prohibited by Section 1201(a)(1), nor has it been shown that the District has refused to bargain collectively, as required by Section 1201(a)(5).

The PLRB based its decision, and both the PLRB and the Association as appellees defend that decision, on the basis of decisions made by federal courts and labor relation agencies under federal labor law. We have previously held, of course, that such decisions are not binding upon this Court and that they are of little value at all in our consideration of the unique provisions of the Pennsylvania Public Employe Relations Act. *Pennsylvania Labor Relations Board v. American Federation of State, County and Municipal Employees, AFL-CIO, supra; Pennsylvania Labor Relations Board v. State College Area School District,* 9 Pa. Commonwealth Ct. 229, 306 A.2d 404 (1973).

We hold here, therefore, that the District's refusal to process the grievance in accordance with the grievance procedure contained in the expired contract did not, as a matter of law, constitute unfair labor practice under either Section 1201(a)(1) or Section 1201(a)(5) of PERA. The order of the lower court, which affirmed the PLRB order that an unfair labor practice had been committed, is reversed.

ORDER

AND Now, this 18th day of March, 1977, the order of the Court of Common Pleas of Lycoming County is reversed.

———

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. Clearly, the public interest is better served by requiring the public employer, on pain of being adjudged guilty of an unfair labor practice, to engage in the grievance process with its working employes without contract, than by exempting it from the process. If this is the better policy, it is

easily implemented by our adoption of the federal law on the subject. *Industrial Union of Marine and Shipbuilding Workers of America, AFL-CIO v. National Labor Relations Board*, 320 F.2d 615 (3rd Cir. 1963). Such action has precedent in our adoption of the federal doctrine with respect to the scope of review of arbitrators' awards in public employes' grievances under collective bargaining agreements. There we might have followed Pennsylvania law with regard to common law arbitration and decided that appeals from binding arbitration under public employer-employe collective bargaining agreements should be reviewed "only for fraud, misconduct, corruption, or other such irregularity which caused the arbitrators to render an unjust, inequitable and unconscionable award." *Keller v. Local 249 International Brotherhood of Teamsters*, 423 Pa. 353, 223 A.2d 724 (1966). Instead, we adopted the milder "essence test" of the federal system. *Teamsters Local Union No. 77 v. Pennsylvania Turnpike Commission*, 17 Pa. Commonwealth Ct. 238, 331, A.2d 588 (1975).

In my view, the combined effect of an order of court that public employes work without a contract and the judicial approval of the public employer's action in refusing to enter into grievance procedures is unnecessarily oppressive and conducive of the labor strife that the Public Employe Relations Act was designed to avoid. I would affirm.

Judge CRUMLISH, JR. joins in this dissent.