In Re: Appeal of Cumberland Valley School District From Final Order of Pennsylvania Labor Relations Board in Case No. PERA-M-6966-C. Cumberland Valley School District, Appellant.

Argued June 8, 1977, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate in the decision.

*Richard C. Snelbaker,* for appellant.

*Forest N. Myers,* with him *James F. Wildeman,* for appellee, Pennsylvania Labor Relations Board.

*Gerald E. Ruth,* for additional appellee, Cumberland Valley Education Association.

*William Fearen, Michael I. Levin* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE MENCER, August 11, 1977:

In 1973 the Cumberland Valley School District (School District) entered into a collective bargaining agreement with the Cumberland Valley Education Association (Association) representing the School District's employees. The contract expired on June 30, 1975, and negotiations which had begun in January 1975 relative to a subsequent contract did not produce a new contract by June 30, 1975. Under the contract which expired on June 30, 1975, the School District was obligated to pay certain benefits for the employees of the bargaining units; namely, (1) medical and hospitalization premiums, (2) life insurance premiums, and (3) certain limited tuition cost reimbursements.

On July 2, 1975, the school board of the district, recognizing that the collective bargaining agreement had expired, ceased payment of public monies for these three enumerated benefits. The School District

also paid the balance of all salaries due members of the bargaining unit under the provisions of the expired contract.

Also, on July 2, 1975, the school board directed its administrative staff to notify all affected employees of the cessation of benefits and authorized the business office to accept payments from said employees to maintain the insurance coverages. Written notices informing the affected employees of these decisions by the school board were sent to them on July 3, 1975.

The Association, on July 7, 1975, filed unfair labor practice charges with the Pennsylvania Labor Relations Board (PLRB), which found that unfair labor practices had been committed by the School District.[1] The School District then appealed to the Court of Common Pleas of Cumberland County, which affirmed the PLRB's order. This appeal followed.

The issue presented here is whether or not the School District's refusal, after July 1, 1975, to pay medical and hospitalization insurance premiums, life insurance premiums, and certain limited tuition cost reimbursements provided for in the contract that had expired on June 30, 1975 violated Sections 1201(a)(1) and (5) of the Public Employe Relations Act (PERA) and thereby constituted an unfair labor practice by the School District.

---

[1] The PLRB's decision concluded that the School District had committed unfair practices in violation of Section 1201, Subsection (a), Clauses (1) and (5), of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201(a)(1), (5), and, *inter alia,* ordered it both to cease and desist from refusing to bargain in good faith with the Association and to take affirmative action to reimburse each employee the amount which the School District would have been required to pay to keep the medical, hospitalization, and life insurance coverage and tuition reimbursement in effect from the time coverage was terminated until again paid for by the School District.

Section 1201 of PERA provides as follows, in pertinent part:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.[2]

. . . .

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative. (Footnote added.)

Our scope of review is limited to a determination of whether or not the PLRB's findings are supported by substantial and legally credible evidence and whether or not the conclusions deduced therefrom are reasonable and not arbitrary, capricious, or illegal. *Pennsylvania Labor Relations Board v. Mars Area School District*, 21 Pa. Commonwealth Ct. 230, 344 A.2d 284 (1975).

The court below, in affirming the PLRB's order, reasoned as follows:

The findings of the [PLRB] disclose that during the six months of negotiation the elimination of the medical, etc., benefits was never proposed by the [School District]. This con-

---

[2] It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement.

Section 401 of PERA, 43 P.S. §1101.401.

clusion is not only supported by the record but by common experience. It is a fact of life (although some may think it should not be) that fringe benefits under employment contracts such as the one at hand are never diminished — any change always results in an increase. Secondly, experience shows, many employees *not* covered by collective bargaining contracts receive medical and hospital benefits. Under these circumstances, any expectation that these benefits might be eliminated from a future employment agreement was totally unrealistic and unwarranted. The termination of the benefits during negotiations when there was no intention to remove them from the ultimate contract was attempted coercion and amounted to an unfair labor practice. (Emphasis in original.)

The reasoning of the PLRB was an even more sweeping generalization in that it held that unilateral termination of insurance coverage during pendency of negotiations constitutes unlawful interference and coercion of the right of public employees to bargain collectively.

This reasoning by the lower court and the PLRB is in error precisely for the reason that it is predicated on the assertion that there was a disruption of the status quo by unilateral action of the School District. This assumption is simply not correct, since the disruption of the status quo resulted by the expiration of the contract and not by any unilateral action of the School District. The School District did not unilaterally terminate the fringe benefits but only reacted to the factual situation which existed on July 1, 1975, to wit, that there was no longer any contract and no longer any obligation on the part of the School District to pay further fringe benefits. It is important to note that

the School District never refused to bargain in good faith and that negotiations continued after July 1, 1975, but what ended was further payment for fringe benefits, and this was due to the expiration of the contract and not due to any unilateral action of the School District which terminated those benefits. Both the PLRB and the lower court have premised their decisions upon a conclusion that the School District unilaterally terminated fringe benefits and thereby committed an unfair labor practice in disrupting the status quo which constituted a violation of the requirement that the parties bargain in good faith. This record will simply not support the conclusion that bargaining ever discontinued or diminished or was conducted on behalf of the School District other than in good faith. It is only by the PLRB and the lower court's attributing the discontinuance of fringe benefits to be the sole responsibility of the School District that a conclusion of bad faith on the part of the School District is reached. Again, the fallacy of that reasoning is simply that it was the expiration of the contract providing those benefits rather than the unilateral action of the School District which caused the benefits to cease.[3]

---

[3] The PLRB also relied on the holding in *NLRB v. Katz*, 369 U.S. 736 (1962), to sustain the Association's charge that the School District's unilateral action constituted a refusal to bargain in good faith. However, that case is readily distinguishable from the case here. Foremost, we have no unilateral action in the instant case by the employer, since fringe benefits were ended by the expiration of the contract providing those benefits, whereas in *Katz* it was the employer's unilateral action that was disapproved. Further, in *Katz* a private employer was negotiating with the union in an attempt to reach an initial collective bargaining agreement. There was no contract in existence as in the present case during the period of negotiations. While the employees were still working, the employer unilaterally changed its sick leave policy, granted merit wage increases, and instituted a new system of automatic wage increases. The *Katz* Court held that such unilateral action by the employer constituted a

Thus, because the contract between the parties here involved had expired, there was no continuing obligation on the part of the School District to make payment of benefits provided for under the expired contract. We are not confronted in this case with vested obligations created by the contract, such as pension right or rights to severance pay, and therefore the general rule that contractual obligations cease with the expiration of the contract must be controlling. We recognized this rule when, in *Pennsylvania Labor Relations Board v. Williamsport Area School District,* 29 Pa. Commonwealth Ct. 355, 370 A.2d 1241 (1977), we held that a refusal to process a grievance pursuant to the terms and provisions of an expired contract did not constitute an unfair labor practice. Likewise, our Supreme Court, in *Philadelphia Federation of Teachers v. Board of Education,* 458 Pa. 342, 327 A.2d 47 (1974), held that a maintenance-of-membership clause contained in a collective bargaining agreement which had expired was unenforceable.

Where no extension of the contract is negotiated, there is no basis for considering that the contract which has expired still governs the relationship of the parties. *Procter & Gamble Independent Union v. Procter & Gamble Manufacturing Co.,* 312 F.2d 181 (2d Cir. 1962). The obligation to pay insurance premiums

refusal to bargain in good faith because it was a refusal to negotiate "in fact". In *Katz,* it was the unilateral action of the employer, designed to influence pending negotiations, that was held improper, whereas in the instant case it was not the employer that changed the status quo or affected the pending negotiations but rather the arrival of June 30, 1975, wereupon the fringe benefits ended as the contract providing those benefits expired.

The PLRB failed to realize that principles of contract law and the terms of an expired contract terminated the fringe benefits. It is simply not correct that these fringe benefits were terminated by the unilateral action of the School District.

414

and other benefits, like all other obligations of the contract, ceased to exist in the instant case on June 30, 1975. *See Paterson Parchment Paper Co. v. International Brotherhood of Paper Makers*, 191 F.2d 252 (3d Cir. 1951).

We cannot conclude that rights secured by a contract can be extended past the agreed upon time by judicial direction. If we were to affirm the lower court here, we would be requiring a public employer to continue the payments of economic fringe benefits beyond the expiration date of the contract and compelling the employer to be responsible for an indefinite extension of the terms of the expired contract. The implementation of such a requirement in the case of a public employer would require an expenditure of public funds at a time when there was no contractual obligation and when no services were being performed in consideration thereof and would consequently be improper. A rule requiring the continuation of economic fringe benefits during a period between two contracts would have to be based upon the assumption that the second contract would require at least comparable benefits and that its effective date would coincide with the expiration date of the former contract. However, contrary to the lower court's view, it is not uncommon for employees to trade off certain fringe benefits in exchange for greater salary or other benefits.

The record in this case does not disclose that there has been any interference with the employees' rights to organize and bargain, as prohibited by Section 1201(a)(1), nor does it disclose that the School District has refused to bargain collectively as required by Section 1201(a)(5). We simply hold, on this record, that when there are no services being performed by the employees, when the previous contract has expired, and when collective bargaining is, in fact, taking place,

a public employer is not, as a matter of law, committing an unfair labor practice under either Section 1201(a)(1) or Section 1201(a)(5) of PERA when it refuses to continue to pay economic fringe benefits which were provided by the terms of the contract which has expired.

The order of the court below which affirmed the PLRB's order that an unfair labor practice had been committed by the School District is reversed.[4]

Judge KRAMER did not participate in the decision in this case.

Judge ROGERS dissents.

ORDER

Now, this 11th day of August, 1977, the order of the Court of Common Pleas of Cumberland County dismissing the appeal of Cumberland Valley School District from the final order of the Pennsylvania Labor Relations Board is hereby reversed, and the final order of the Pennsylvania Labor Relations Board in the above captioned case, under date of September 9, 1975, is hereby set aside.

---

[4] Since we conclude that the School District did not commit an unfair labor practice and reverse, we need not, and do not, decide whether or not the PLRB has the authority to make the affirmative action order, including the requirement that the School District reimburse employees for fringe benefits subsequent to June 30, 1975, that it entered in this case.