394 A.2d 946

In re Appeal of CUMBERLAND VALLEY SCHOOL DISTRICT FROM FINAL ORDER OF PENNSYLVANIA LABOR RELATIONS BOARD IN CASE NO. PERA–M–6966–C—.

Appeal of CUMBERLAND VALLEY EDUCATION ASSOCIATION.

In re Appeal of CUMBERLAND VALLEY SCHOOL DISTRICT FROM FINAL ORDER OF PENNSYLVANIA LABOR RELATIONS BOARD IN CASE NO. PERA–M–6966–C—.

Appeal of PENNSYLVANIA LABOR RELATIONS BOARD.

Supreme Court of Pennsylvania.

Argued Sept. 25, 1978.

Decided Nov. 18, 1978.

Gerald E. Ruth, York, Anthony D. Newman, Harrisburg, for appellant at No. 244.

James L. Crawford, James F. Wildeman, Raymond W. Cromer, Harrisburg, for appellant at No. 245.

Richard C. Snelbaker, Mechanicsburg, for Cumberland Valley School Dist., appellees at No. 244.

James L. Crawford, James F. Wildeman, Harrisburg, for Pa. Labor Relations Bd. at No. 244.

Richard C. Snelbaker, Mechanicsburg, for Cumberland Valley School Dist. at No. 245.

Gerald E. Ruth, York, Anthony D. Newman, Harrisburg, for Cumberland Valley Ed. Ass'n at No. 245.

Michael I. Levin, Harrisburg, for amicus curiae Pa. School Bd.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

The Cumberland Valley Education Association ("the Association") is the exclusive bargaining agent for the teachers in the Cumberland Valley School District ("the District"). On July 7, 1975, the Association charged the District with unfair labor practices under Sections 1201(a)(1), (3), and (5) of Pennsylvania's Public Employee Relations Act, popularly known as Act 195.

The Association and the District entered into a collective bargaining agreement which was effective from July 1, 1973 to June 30, 1975. Under this agreement, the District agreed to pay premiums for medical and hospitalization insurance for employees and their dependents, premiums for life insurance for employees, and tuition expenses for employees. The agreement expired on June 30, 1975, while negotiations for a new agreement were in progress. On July 2, 1975, the District terminated payments for the health and life insurance plans. At the same time, the District notified teachers it would no longer pay educational expenses. During this period the employees were not on strike.

Under Sections 1201(a)(1), (3), (5), respectively, public employers are prohibited: from "interfering, restraining and coercing employes" in the exercise of their collective bargaining rights under the act; from discriminating with respect to "hire or tenure of employment to encourage or discourage membership in any employe organization," and from "refusing to bargain in good faith with an employe representative which is the exclusive representative of employes."

The Pennsylvania Labor Relations Board ("the Board") concluded that the District refused to bargain in good faith and thereby interfered with the employees' collective bargaining right; however, the Board dismissed the discrimination charge under § 1201(a)(3). 6 PPER 211 (1975). The Board also found in support of the District's countercharge that the Association committed a technical violation of the Act when it mailed an offer to continue the terms of the present contract to the School Board President instead of to the chief negotiator as agreed upon in the ground rules. In its final ruling, the Board ordered the School District to reimburse or make whole the payment necessary to keep the employees' insurance coverage and limited cost reimbursement plan current.

The District appealed the Board's order to the Court of Common Pleas. The court, however, dismissed the District's appeal and affirmed the decision of the Board. 26 Cumb.

197 (1976). The District then appealed this decision to the Commonwealth Court which reversed the lower court. The Commonwealth Court reasoned that because the contract with the School District expired, this event rather than the unilateral termination by the Board caused the benefits to cease. 31 Pa.Cmwlth. 407, 412, 376 A.2d 674 (1977). The Commonwealth Court did not logically reach the remedy issue as it did not find the District guilty of any unfair labor practice. These appeals by the Pennsylvania Labor Relations Board and the Association followed.

We disagree and therefore reverse the decision of the Commonwealth Court.

The Board's decision finds substantial support in the record and also promotes the labor policy embodied in Act 195—providing a peaceful and orderly means of resolving disputes through the collective bargaining process. 43 P.S. § 1101.101 (Supp.1978–79).

■ Findings of the Pennsylvania Labor Relations Board are conclusive if supported by substantial evidence. 43 P.S. § 1101.1502 (Supp.1978–79). (July 23, 1970, P.L. 563, No. 195, art. XV, § 1501, as amended 1971, June 3, P.L. 146, No. 6, § 1 (§ 509(a)(180), (181)). *See e. g., St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977); *Borough of Wilkinsburg v. Sanitation Dept. of Borough of Wilkinsburg,* 463 Pa. 521, 345 A.2d 641 (1975); *Pennsylvania Labor Relations Board v. Sand's Restaurant,* 429 Pa. 479, 240 A.2d 801 (1968); *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 192 A.2d 707 (1963); *Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc.,* 345 Pa. 398, 29 A.2d 90 (1940). This Court has said that substantial evidence means more than a "mere scintilla." *Pennsylvania Labor Relations Board v. Sand's Restaurant, supra; Pennsylvania Labor Relations Board v. Kaufmann Department Stores, supra.* The substantial evidence test articulated fully in *Kaufmann,* 345 Pa. at 400, 29 A.2d at 92, means

". . . that it is the function of the board not only to appraise conflicting evidence, to determine the credibility

of witnesses, and to resolve primary issues of fact, but also to draw inferences from the established facts and circumstances. . . ." (Citations omitted)

The Board is delegated the exclusive function to decide cases arising under Act 195 in the first instance, 43 P.S. § 1101.501 (Supp.78–79), and correspondingly, on appeal our standard of review is limited. We have said:

". . . [this Court] will not lightly substitute its judgment for that of a body selected for its expertise whose experience and expertise make it better qualified than a court of law to weigh facts within its field." *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. at 377, 192 A.2d at 716.

This limited standard of review is also consistent with federal court decisions which have interpreted a similar provision of the National Labor Relations Act. *Compare* 29 U.S.C. § 160(e) and 29 U.S.C. § 158(a)(1) and (3) with 43 P.S. § 1101.1502. *See e. g., Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Leeds and Northrup Co. v. National Labor Relations Board,* 391 F.2d 874 (3d Cir. 1963).

In applying the substantial evidence test, we agree with the Board's conclusion and its findings in support thereof that the District's unilateral action under these circumstances constitutes a refusal to bargain in good faith under Sections 1201(a)(1) and 1201(a)(5). *Accord, Pennsylvania Labor Relations Board v. Mars Area School District,* 480 Pa. 295, 389 A.2d 1073 (1978) (substantial evidence supports the Board's determination that a public employer violated Sections 1201(a)(1) and 1201(a)(5) by refusing to bargain.)

The Board found the following facts most of which are undisputed: The parties stipulated that negotiations concerning the medical and hospitalization were held between the parties prior to the expiration of the collective bargaining agreement on June 30, 1975. During these negotiations neither party proposed the reduction or elimination of the

above-enumerated fringe benefits from the future contract. The School District proposed a contract which contained the same fringe benefit provisions as were contained in the prior collective bargaining agreement. The Association also proposed continuation of the same benefits but added a proposal to include out-patient radiation coverage on medical insurance. On July 2, 1975, the District unilaterally cancelled payments for medical and life insurance, and tuition cost reimbursements, effective June 30, 1975, without notifying the Association. While the District cancelled payments for members of the Association, it continued payments for those employed by the District who did not belong to the Association's bargaining unit. During negotiations of the previous contract which expired in 1973 certain medical, life insurance and tuition cost reimbursements were paid by the District for members of the Association's bargaining unit.

Appellee suggests that the line of cases defining the good faith obligation of employer and employee which the Board considered under the National Labor Relations Act is inapplicable because the National Labor Relations Act (NLRA) concerns private employment while Act 195 concerns public employment. However, the present case does not present a situation where there exists a meaningful difference in policy between the NLRA and Act 195. *See Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). *Accord, Pennsylvania Labor Relations Board v. Mars Area School District, supra* (federal law following in holding refusal to bargain violation of Section 1201(a)(1) of Act 195). To the contrary, both acts favor the collective bargaining process. Section 701 of Act 195 which defines collective bargaining is substantially identical to Section 151 of the National Labor Relations Act. In the past, when a provision of Act 195 is similar to NLRA, we have looked to federal decisions for guidance. *See Borough of Wilkinsburg, supra,* (whether the bargaining out of unit work constituted an unfair labor practice), *Sand's Restaurant Corporation, supra,* (whether an employer display of anti-union animus combined with an

insubstantial employer explanation for discharges was sufficient evidence of an unfair labor practice); *Kaufmann, supra,* (whether the Board's findings were supported by substantial evidence). The duty to bargain in good faith means that the parties must "make a serious effort to resolve differences and reach a common ground." *NLRB v. General Electric Co.,* 418 F.2d 736, 738 (2nd Cir. 1969), *cert. denied,* 397 U.S. 965, 90 S.Ct. 995, 25 L.Ed.2d 257 (1970).

The District in this case violated its good faith obligation. The District terminated the benefits to the Association while collective bargaining was in process. Such action by the District cannot be said to "represent a serious effort" at reaching a collective bargaining agreement. *Accord, Pennsylvania Labor Relations Board v. Mars Area School District, supra* (unilateral termination of employment of paid employee teacher-aides and substitution with volunteer workers constitutes bad faith bargaining).

The United States Supreme Court in *NLRB v. Katz,* 369 U.S. 736, 744, 82 S.Ct. 1107, 1112, 8 L.Ed.2d 230, 236 (1962) found improper an employer's unilateral increase in wages and changed sick-leave benefits while those matters were under negotiation. The Court said that an employer's unilateral change was also in violation of the collective bargaining process:

"We hold that an employer's unilateral change in conditions of employment under negotiation is similarly a violation of § 8(a)(5) [the employer's duty to bargain collectively] for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8(a)(5) much as does a flat refusal." *Id.*

In *Borden, Inc. v. NLRB,* 196 NLRB No. 172, 80 LRRM 1240 (1972), the NLRB held that an employer's unilateral withdrawal of insurance plans under a prior contract while negotiations are in progress for a new contract constitute a violation of the employees' right to bargain collectively and not to coerce employees in this process. The policy underlying this proposition was well-stated in *Hinson v. NLRB,* 428 F.2d 133 (8th Cir. 1970):

"The spirit of the National Labor Relations Act and the more persuasive authorities stand for the proposition that, *even after expiration of a collective bargaining contract,* an employer is under an obligation to bargain with the Union before he may permissibly make any unilateral change in those terms and conditions of employment comprising mandatory subjects of bargaining." (Emphasis added.)

The Court went on to explain that the employer's duty to bargain arose

". . . *not by reason of the contract itself but because of the dictates of the policy embodied in the National Labor Relations Act.*" (Emphasis in original.) 428 F.2d at 138.

In this case, the District cancelled payments to the Association members while collective bargaining was in process. The coercive effect of the unilateral cancellation of benefits during the collective bargaining process is obvious. The bargaining authority of the union to freely bargain is seriously undermined. In *Leeds and Northrup, supra,* 391 F.2d at 877, the Third Circuit Court of Appeals said:

"The Act [the National Labor Relations Act] not only protects the employees from the direct economic effect of the employer's unilateral action, but also forbids the by-passing of the collective bargaining agent, for this would undermine the union's authority by disregarding its status as the representative of the employees."

The collective bargaining process is fundamental to the policies of Pennsylvania's Public Employee Relations Act. 43 P.S. § 1101.701 (Supp.1978–79). Under Section 701:

"Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment . . ." 43 P.S. § 1101.701. (Supp.1978–79).

Fringe benefits such as health and life insurance and tuition reimbursement which the Employer unilaterally terminated are "wages" within the meaning of Section 301(14) of the PERA. Section 301(14) defines wages as "hourly rates of pay, salaries, *or other forms of compensation for services rendered.*" (Emphasis added.) 43 P.S. § 1101.-301(14). (Supp.1978–79).

This Court has also pointed out the vital role of public employee collective bargaining to minimize public employee labor disputes in *PLRB v. State College Area School District,* 461 Pa. at 494, 337 A.2d at 262 (1975). There, we said:
". . . the right of collective bargaining was crucial to any attempt to restore harmony in the public sector. It would be absurd to suggest that the legislature deliberately intended to meet this pressing need by providing an illusory right of collective bargaining." 461 Pa. at 503, 337 A.2d at 266.

Because the Board's findings of fact and conclusions are supported by substantial evidence, we must affirm the Board's order. Under these circumstances, this Court will not substitute its judgment for the judgment of the Board.

▓▓▓▓ The School District challenges the authority of the Board to order the remedy of making the employees whole. The final order issued by the Board required the School Board to
"(a) Reimburse or otherwise make whole each employe whose medical hospitalization and life insurance coverage and tuition reimbursement was terminated, by the amount which the Cumberland Valley School District would have been required to pay to keep such coverage in effect for that employe or otherwise from the time coverage was terminated until it was again paid for by the School District."

It is well established that final orders of the Board are to be affirmed if they are reasonable. See discussion, *supra.* Because the remedy which the Board formulated is within the scope of its powers set forth in Act 195 and is consistent

with other decisions of this Court, we must reject the School District's contention.

Under Section 1301 of Act 195, the Board is empowered to "prevent any person from engaging in *any* unfair practice listed under the Act." 43 P.S. § 1101.1301 (Supp.1978–79). More specifically, Section 1303 grants the Board the power to

". . . order . . . such person to cease and desist from such unfair practice, and to take such reasonable affirmative action, including reinstatement of employes, discharged in violation of Article XII of this act, (the unfair labor practice section) (citation omitted) with or without back pay, as will effectuate the policies of this act." (Emphasis added.) 43 P.S. § 1303 (Supp.1978–79).

The Board's powers are remedial in nature and not punitive. *Pennsylvania Labor Relations Board v. Martha Co.,* 359 Pa. 347, 350, 59 A.2d 166, 168 (1948). The unfair labor practice at issue is the unilateral termination of payments for the fringe benefits of the employees represented by the Union. As a result, those employees were required to either forego medical, hospital and life insurance and tuition reimbursements or make the payments for the benefits themselves. Common sense dictates that those employees be made whole for the payments they had to make as a result of the employer's unfair practice. When the Board in this case ordered the School District "to reimburse or otherwise *make whole* each employe," such action is in the purest sense remedial and not punitive.

This Court in *Hollinger v. Dept. of Public Welfare,* 469 Pa. 358, 365 A.2d 1245 (1976) said that the Board had the authority to compel the employer to pay dues which were improperly taken from employees.

"In our view the language of this provision is broad enough to permit the PLRB not only to order cessation of improper dues deductions if it finds that they are being made, but also to compel the payment to employes of moneys which have been improperly deducted." (Federal court citations omitted). 469 Pa. at 369, 365 A.2d at 1251.

If the Board could order the employers in *Hollinger* to pay dues improperly deducted it could also compel the employer in this case to reimburse or otherwise make whole the employees whose fringe benefits were unilaterally terminated.

Federal courts in examining the federal counterpart to Section 1303 have also enforced similar remedies. Under Section 10(e) of the NLRA, the National Labor Relations Board

". . . shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, *and to take such affirmative action including reinstatement of employees with or without back pay*, as will effectuate the policies of this Act. . . ." ·(Citations omitted.) (Emphasis added.)

In a similar case, the National Labor Relations Board ordered the employer to reinstate a cancelled insurance program and required the employer to reimburse any employees for premiums paid and to honor any claims which arose during cancellation. *Borden, Inc. v. NLRB, supra.* The Circuit Court for the District of Columbia also enforced a NLRB order which required the employer to reimburse employes for losses suffered by reason of the employer's withholding of premium pay and similar fringe benefits after contract termination. *Local 155 of International Molders and Allied Workers v. NLRB*, 143 U.S.App.D.C. 20, 26, 442 F.2d 742, 748 (1971). When the NLRB's reimbursement remedy was attacked as *ultra vires*, the Court of Appeals for the Eighth Circuit said,

"A particularly vigorous assault is made upon the remedy which the Board fashioned in requiring petitioner to pay health, welfare, and retirement benefit contributions from and after the expiration date of the collective bargaining agreement. Inasmuch as the unfair labor practice charges were supported to our satisfaction by substantial evidence on the whole record, the Board must be given broad authority under the Act, 29 U.S.C. § 160(c), to restore the *status quo ante* and to make whole any losses

suffered by employees because of the unfair labor practices. (Citations omitted).

It is well settled that '[i]t is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged.' (citation omitted.)

The fact that the collective bargaining agreement has terminated does not bar the remedy, even though it is geared to the specific terms of that contract. The spirit of the National Labor Relations Act and the more persuasive authorities stand for the proposition that, even after expiration of a collective bargaining contract, an employer is under an obligation to bargain with the Union (citation omitted) before he may permissibly make any unilateral change in the terms and conditions of employment." (Emphasis in original.) *Hinson v. NLRB, supra,* 428 F.2d at 136.

Because we find the above-cited authorities persuasive and the remedy of the PLRB necessary to effectuate the collective bargaining policy of Act 195, the Board's final order is proper.

The Commonwealth Court's decision is vacated and the order of the Common Pleas Court which reinstates the Board's order is affirmed.

LARSEN and POMEROY, JJ., filed separate concurring opinions.

POMEROY, Justice, concurring.

I concur in the Court's holding that the Cumberland Valley School District ("School District" or "District") committed an unfair labor practice under Section 1201(a)(5) of the Public Employe Relations Act[1] ("PERA" or "the Act") by eliminating through unilateral action of its own all medical and life insurance benefits and tuition cost reimbursements to its employees. I cannot, however, agree that the School District violated Section 1201(a)(1), 43 P.S. § 1101.-1201(a)(1), nor can I assent to the majority's wholesale

1. Act of July 23, 1970, P.L. 563, No. 195, art. XII, § 1201(a)(5), 43 P.S. § 1101.1201(a)(5) (Supp.1978).

importation of federal interpretive case law in the private sector under the National Labor Relations Act (NLRA) in deciding this public sector case under the Pennsylvania statute.

The majority finds that the District's action constitutes a refusal to bargain in good faith under both Sections 1201(a)(1) and 1201(a)(5) of PERA. Opinion of the Court, *ante* at 949, citing *Pennsylvania Labor Relations Board v. Mars Area School District,* 480 Pa. 295, 389 A.2d 1073 (1978). As in *Mars,* I agree that the District violated PERA for "[r]efusing to bargain collectively in good faith," see the PERA, 43 P.S. § 1101.1201(a)(5), but I cannot see how the District was guilty of "[i]nterfering, restraining or coercing employees in the exercise of their rights guaranteed in Article IV" of PERA. See the PERA, 43 P.S. § 1101.-1201(a)(1). What I said in a separate opinion in *Mars* applies equally in the instant case, *viz.,* that subsection (1) of 1201(a) of the Act is directed primarily at frustration by a public employer of union organizing efforts rather than at employer refusal to bargain.[2] 480 Pa. 309, 389 A.2d at 1080 (concurring and dissenting opinion of Pomeroy, J.). While I believe that the employer did not bargain in good faith, for reasons expressed below I remain unconvinced that it is necessary to embellish this finding with a finding of "interference, restraint, or coercion," none of which apparently exists here.

In deciding this case the Court once again retreats from its found determination in the leading case of *Pennsylvania*

2. A finding of a violation of Section 1201(a)(1) necessarily requires a finding of interference with or restraint or coercion of employees in the exercise of their rights guaranteed by Section 401 of PERA, 43 P.S. § 1101.401. That section is the "employe rights" provision of the statute, and provides as follows:

"It shall be lawful for public employes to organize, form, join or assist in employee organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement."

*Labor Relations Board v. State College Area School District,*
461 Pa. 494, 337 A.2d 262 (1975), where we said that al-
though federal decisions may provide some guidance, "it
does not necessarily follow that federal precedent relating to
private employment is particularly helpful in resolving diffi-
culties in the public sector." 461 Pa. at 499, 337 A.2d at 264.
The Court in *State College* also observed:

"[W]e are mindful of the distinctions that necessarily
must exist between legislation primarily directed to the
private sector and that for public employes. The distinc-
tion between the public and private sector cannot be
minimized. Employers in the private sector are motivated
by the profit to be returned from the enterprise whereas
public employers are custodians of public funds and man-
dated to perform governmental functions as economically
and effectively as possible. The employer in the private
sector is constrained only by investors who are most
concerned with the return for their investment whereas
the public employer must adhere to the statutory enact-
ments which control the operation of the enterprise. We
emphasize that we are not suggesting that the experience
gained in the private sector is of no value here, rather we
are stressing that analogies have limited application and
the experiences gained in the private employment sector
will not necessarily provide an infallible basis for a mono-
lithic model for public employment." 461 Pa. at 499–500,
337 A.2d at 264 (footnote omitted).

The cautious approach of *State College* seems now to have
been abandoned in favor of a more expansive doctrine
expressed by *NLRB v. Katz,* 369 U.S. 736, 744, 82 S.Ct. 1107,
1112, 8 L.Ed.2d 230, 236, *Borden, Inc. v. NLRB,* 196 NLRB
No. 172, 80 LRRM 1240 (1972), and other cases decided under
the NLRA. The ultimate effect could very well be the
swallowing up of the special and distinctive character of the
PERA by a larger body of law developed under a statute
which is not at all concerned with the delicate problems
which inhere in labor relations where the employer is a
public body. This is an effect that is neither desirable nor
intended by the legislature.

I believe that an unfair labor practice was committed here under PERA for the sole reason that the employer violated Section 1201(a)(5). The District appears to me to have acted in an arbitrary and capricious manner *vis-à-vis* its employees when it cut off all benefits at the expiration of the existing contract without following the mandated procedure prescribed by the Act.[3] The PERA sets forth in clear language necessary steps required to establish an "impasse."[4] Section 801 of the PERA, *supra* note 4, 43 P.S. § 1101.801, provides that as a first step the parties must request the services of the Pennsylvania Bureau of Mediation; this event must

**3.** The Pennsylvania Labor Relations Board advances the following argument in its brief at p. 27:

"[O]nly *after* impasse procedures may a public employer or public employes take unilateral action such as a lockout, a strike, or unilateral termination of employe fringe benefits. This rule has been in essence adopted by the New York Court of Appeals in *Board of Cooperative Educational Services of Rockland County v. Public Employment Relations Board,* 41 N.Y.2d 753 [395 N.Y.S.2d 439], 363 N.E.2d 1174 (1977)." (Emphasis in original). See n. 4, *infra.*

**4.** Article VIII of PERA reads in pertinent part:

"COLLECTIVE BARGAINING IMPASSE

§ 1101.801  Submission to mediation

If after a reasonable period of negotiation, a dispute or impasse exists between the representatives of the public employer and the public employes, the parties may voluntarily submit to mediation but if no agreement is reached between the parties within twenty-one days after negotiations have commenced, but in no event later than one hundred fifty days prior to the 'budget submission date,' and mediation has not been utilized by the parties, both parties shall immediately, in writing, call in the service of the Pennsylvania Bureau of Mediation.

§ 1101.802  Fact-finding panels

Once mediation has commenced, it shall continue for so long as the parties have not reached an agreement. If, however, an agreement has not been reached within twenty days after mediation has commenced or in no event later than one hundred thirty days prior to the 'budget submission date,' the Bureau of Mediation shall notify the board of this fact. Upon receiving such notice the board may in its discretion appoint a fact-finding panel which panel may consist of either one or three members. If a panel is so designated or selected it shall hold hearings and take oral or written testimony and shall have subpoena power. If during this time the parties have not reached an agreement, the panel shall make findings of fact and recommendations:

occur no later than 150 days prior to the "budget submission date."[5] According to the School District's own calculation, mediation should have been requested no later than January 31, 1978. Section 802 of the PERA, *supra* note 4, 43 P.S. § 1101.802, further requires that if an agreement is not reached by 130 days prior to the "budget submission date" the Bureau of Mediation must notify the Pennsylvania Labor Relations Board, which, at its discretion, may institute a process known as "fact-finding." See note 4, *supra*. This stage apparently could have been reached well before the expiration of the 1973–1975 collective bargaining agreement.

The above described processes are designed to facilitate an accord, and comport with the policy of the Act to "promote orderly and constructive relationships between all public employers and their employees." 43 P.S. § 1101.101. The District circumvented the procedural safeguards of the PERA by continuing negotiations which had been commenced before the contract expiration date, and then without warning terminating the benefits the prior contract afforded. The District urges that "the union shares equally with the employer the responsibility for instituting media-

> (1) The findings of fact and recommendations shall be sent by registered mail to the board and to both parties not more than forty days after the Bureau of Mediation has notified the board as provided in the preceding paragraph.
> (2) Not more than ten days after the findings and recommendations shall have been sent, the parties shall notify the board and each other whether or not they accept the recommendations of the fact-finding panel and if they do not, the panel shall publicize its findings of fact and recommendations.
> (3) Not less than five days nor more than ten days after the publication of the findings of fact and recommendations, the parties shall again inform the board and each other whether or not they will accept the recommendations of the fact-finding panel."

5. The "budget submission date" is defined by Section 301(12) of the PERA as follows: "the date by which under the law or practice a public employer's proposed budget, or budget containing proposed expenditures applicable to such public employer is submitted to the Legislature or other similar body for final action. For the purposes of this act, the budget submission date for the Commonwealth shall be February 1 of each year and for a nonprofit organization or institution, the last day of its fiscal year." In the instant case, involving a school district, the budget submission date was June 30, 1975.

tion." (District brief at 16). This position, while technically correct, see note 4, *supra*, does not remove the District's responsibility to bring the negotiations process to an "impasse" before cutting off benefits. Utilization and exhaustion of the mediation and fact finding stages contemplated by the Act are a prerequisite to the right to strike. See Section 1003 of PERA, 43 P.S. § 1101.1003.[6] This statutory precondition must equally apply to the right to terminate benefits following the expiration of a collective bargaining agreement. The District's action in violation of Sections 801 and 802 subverted the orderly collective bargaining process and as such constituted a transgression under Section 1201(a)(5).

LARSEN, Justice, concurring.

I join with the majority opinion; additionally I wish to note that if the employees were on strike then the employer could have terminated these benefits even though good faith negotiations were occurring.

6. Section 1003 of PERA reads in pertinent part:
   "[A] strike by public employes occurs after the collective bargaining processes set forth in sections 801 and 802 of Article VII of this act have been completely utilized and exhausted . . . ."