568 A.2d 715

## CITY OF READING, Petitioner,

v.

## COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Dec. 29, 1989.

398

David A. Binder, Asst. City Sol., with him, Jack A. Litton, City Sol., Reading, for petitioner.

James L. Crawford, with him, Peter Lassi, Harrisburg, for respondent.

Charles T. Joyce, with him, Alaine S. Williams, Walters & Willig, Philadelphia, for intervenor, AFSCME, Dist. Council 88, AFL–CIO.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

This is an appeal by the City of Reading (City) from an order of the Pennsylvania Labor Relations Board (Board) which accepted a recommended decision and order of a hearing examiner and, hence, concluded that the City had violated Section 1201(a)(3) and (4) of the Public Employe Relations Act, (Act 195) Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a)(3) and (4), by discriminating against Dennis Schmehl on the basis of Schmehl's union activities and discharging Schmehl for those activities.[1]

The relevant findings are as follows. On April 6, 1987, an unfair labor practice charge was filed with the Board by the American Federation of State, County and Municipal Employees, District Council 88 (Union) on behalf of Schmehl alleging violations of Section 1201(a)(3) and (4) of Act 195 by discriminating against Schmehl on the basis of his union activities. Conciliation efforts were unsuccessful and the matter went to a hearing. At the June 27, 1987 hearing, the hearing examiner permitted the Union to amend the charge to state that Schmehl was discharged on January 21, 1987. The date on which the amendment was permitted was more than four months beyond either Schmehl's suspension (on December 18, 1986) or his termination (on January 21, 1987).

The hearing examiner found that Schmehl had been employed by the City in its Water Department from 1974 through 1987 as a Water Plant Operator. On December 18, 1986, Schmehl was suspended indefinitely. The City alleged that the reasons for the suspension and ultimate

1. Section 1201 pertinently provides:
 (a) Public employers, their agents or representatives are prohibited from:
 . . . .
 (3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.
 (4) Discharging or otherwise discriminating against an employe because he has signed or filed an affidavit, petition or complaint or given any information or testimony under this act.

discharge on January 21, 1987 were intoxication on the job, sleeping while on duty and insubordination because of Schmehl's alleged failure to perform an assigned work task. Ten demerits were issued for these offenses.

According to the findings, on the morning of December 17 when Schmehl reported to work he had the opportunity to talk with a Mr. Babb whom he was relieving. The following day the superintendent, who was Babb's supervisor, requested Babb's opinion as to whether Schmehl appeared to be intoxicated the previous morning. Babb indicated that he did not think so; that he had not smelled alcohol on Schmehl's breath or person; that he did not notice Schmehl having slurred his words, or staggered; and that Schmechl had not appeared glassy eyed. Further, on December 17, the day of the alleged incident, the superintendent summoned Mr. Albert Shade to his office. Shade was Schmehl's first line supervisor. Shade was asked to verify that Schmehl was intoxicated. Shade informed the superintendent that he could not tell whether Schmehl was intoxicated and he, too, indicated that he had not smelled alcohol on Schmehl's person, and had not noticed a staggering gait or glassy eyes.

Subsequent to this "investigation," on December 18, Schmehl was called to the personnel office with respect to the incident occurring the previous day. Although he was questioned about the incident, he declined to provide any explanation.

The hearing examiner also found that James Pfleger is the Personnel Director for the City and that on December 18 Pfleger had offered Schmehl an opportunity to explain his alleged conduct the previous day which opportunity Schmehl had declined. Thereafter, Pfleger discussed the matter with Councilman Leonardziak who was the Director of the Department of Streets and Public Improvements and an individual who possessed responsibility for personnel matters within the day-to-day operation of the Water Department. Pfleger recommended to Leonardaziak that Schmehl be terminated which he subsequently was.

The hearing examiner further found that prior to terminating Schmehl, Pfleger had never spoken with Babb regarding Babb's impressions of whether Schmehl had been intoxicated on duty and, further, Pfleger was aware of a written statement Shade had provided in which he stated that he was not sure whether Schmehl had been intoxicated on December 17.

Additionally, the hearing examiner found that prior to his discharge Schmehl served as Vice–President and Chief Steward of the Union for the previous thirteen months and had been active in the Union in various capacities. He further found that in grievance meetings with City representatives Schmehl was often hostile, loud and demanding and that he had, on previous occasions, become involved in direct heated confrontations with City representatives including Pfleger. Specifically, the hearing examiner noted that in January 1986 Schmehl, acting in his capacity as Chief Steward, had attended a grievance hearing with Pfleger and at that time Pfleger had stated to Schmehl, "well Schmehl, if I wanted to take your job, I would definitely fire you." At a second grievance meeting in the spring of 1986, Pfleger again became involved in a confrontation with Schmehl and stated to Schmehl that he, Pfleger, was experienced in Union business because he had been a former union official and that because of his experience he could get rid of Schmehl easily.

The hearing examiner also found that in early 1986 during negotiations where Union members were attempting to lobby council members for an economic package, Schmehl, along with Union President Ronald Whitmoyer, had gone to a local tavern to visit Councilman Leonardziak in an attempt to gain support for the Union. Leonardziak told them "f... you and the Union. You didn't do nothing for me." Leonardziak further indicated he would take care of his "own people" and that "his men" did not need the Union.

Finally, the hearing examiner found credible testimony relating to several other City employees who had allegedly reported to work in an intoxicated condition and had re-

ceived far less serious disciplinary penalties. Based upon what he perceived to be disparate treatment against Schmehl and upon his findings that the City through Pfleger and Leonardziak had singled Schmehl out for harsher treatment based on his union activities, he concluded that Section 1201(a)(3) and (4) of Act 195 had been violated and recommended that Schmehl be reinstated. Exceptions were filed and the Board adopted the hearing examiner's recommended decision and order. It is from the Board's order that the City takes this appeal.

■ Preliminarily, we note that our scope of review of a Board order is limited to determining whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. *Harbaugh v. Pennsylvania Labor Relations Board*, 107 Pa.Commonwealth Ct. 406, 528 A.2d 1024 (1987). As long as the Board's findings are supported by substantial evidence, they are conclusive on appeal. *Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978). It is the Board's function to appraise the conflicting evidence, determine credibility matters, resolve factual questions and draw inferences from the facts and circumstances. *Id.*

■ On appeal here the City raises several issues which we shall deal with seriatim. First, the City contends that the Union's attempt to amend its complaint at the time of hearing was improper. Pursuant to Section 1505 of Act 195, 43 P.S. § 1101.1505, "No petition or charge shall be entertained which relates to acts which occurred or statements which were made more than four months prior to the filing of the petition or charge." In the instant case the unfair labor practice charge was filed by the Union on April 6, 1987 and stated pertinently as follows: "The union's Vice President and Chief Steward, Dennis Schmehl was suspended/terminated in December 1986 for alleged alcohol related offenses. A number of other employees, not officers of the local union, have, in the past, been disciplined far less severely for more serious and more frequent alcohol related

offenses. In terminating Schmehl, the employer has discriminated against him for union activity and demonstrated anti-union animus." At the June 26, 1987 hearing, the Union was allowed to amend its charge to read that Schmehl was suspended indefinitely on December 18, 1986 and terminated officially on January 21, 1987.

The City contends that the Union's original charge challenged only the suspension and that the amendment permitted a new cause of action with respect to the termination. Pursuant to Board Regulation 95.32(a), a charge may be amended beyond the four-month limitation where the amendment occurs before the issuance of a final order and the amendment does not add a new cause of action after the four month statute of limitations has run. While the City attempts to argue that a new cause of action was inserted in the amendment, we find this argument to be totally without merit. It is clear beyond peradventure that the original unfair labor practice charge mentioned *both* suspension and termination although the termination date was not provided. The purpose of the amendment was simply to clarify this matter. Accordingly, we agree with the Board that the amendment was properly permitted.

 Next, the City asserts that the Union failed to meet its burden of proof to demonstrate that the discharge had violated Section 1201(a) of Act 195. In order to establish a violation of Section 1201(a)(3) of Act 195, a complainant must demonstrate unlawful motive or anti-union animus on the part of the employer. *Harbaugh.*

 The Board found credible the testimony that Pfleger and Leonardziak had in the past directed anti-union statements toward Schmehl. It is permitted to draw inferences of unlawful motive from the facts. *Camp Hill Borough v. Pennsylvania Labor Relations Board,* 96 Pa. Commonwealth Ct. 457, 507 A.2d 1297 (1986), *petition for allowance of appeal denied,* 516 Pa. 615, 531 A.2d 781 (1987). And we certainly agree that anti-union statements made to a Union member by individuals who are ultimately

responsible for terminating or recommending termination of that employee can demonstrate unlawful motive. While the City attempts to down play the statements by Pfleger and Leonardziak, as we previously observed, credibility matters and the weight of the evidence are for the Board to determine and as long as its findings are supported by substantial evidence there is no basis for reversal because the City disagrees with credibility determinations.

■ Further, we agree with the Board that evidence that other employees received lesser penalties for allegedly being intoxicated on the job is an acceptable basis for a finding of anti-union discrimination. Disparate treatment has previously been recognized in discrimination cases as a valid way of demonstrating an improper bias provided the circumstances of the employees who are compared with the complainant are sufficiently similar. *See e.g., Scasserra v. Civil Service Commission,* 4 Pa.Commonwealth Ct. 283, 287 A.2d 158 (1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1453, 35 L.Ed.2d 703 (1973); *Norristown State Hospital v. Bruce,* 69 Pa.Commonwealth Ct. 298, 450 A.2d 1093 (1982).

The City, in a legal argument which we fail to fathom, seems to suggest that the hearing officer by permitting testimony relating to treatment of other employees somehow shifted the burden of proof to the City. This evidence, however, was clearly submitted by Schmehl to demonstrate unlawful motive. Once that was done the City then had to offer a valid reason for the disparate treatment. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If it did so, then Schmehl had to demonstrate and persuade the fact finder that the proffered reasons for the treatment were pretextual. *See id.*

The record reveals that one employee (No. 3)[2] had been given numerous warnings regarding unexcused latenesses which he had claimed were due to a drinking problem. Upon agreeing to attend Alcoholics Anonymous meetings

2. The hearing examiner designated the employees by number so as to preserve anonymity.

that employee was given only a warning. Employee No. 6 was also alleged to have been drinking on the job. He was given three demerits and a two-day suspension. Employee No. 6 was disciplined again for drinking problems and given an indefinite suspension and an opportunity to enter a detoxification program so as to preserve his job. He was not an officer or steward in the local union. Employees No. 8 and No. 9, who were not officers or union stewards, were merely given warnings not to drink on the job. Another employee (not given a number) was disciplined for insubordination and drinking on the job (second warning) and falsifying his time card. For these offenses he received a five-day suspension without pay and six demerits. He also was not a union steward or officer.

The City seems to contend that under the Union's rationale it is not permitted any flexibility in its disciplinary procedures. We do not agree. It certainly is permitted flexibility; what it may not do is base its decisions to grant leniency to some employees while being harsh with others upon union activity.

The next basis for challenge is the fact that the hearing examiner allowed the introduction of an arbitration award involving another City employee which had been entered one week prior to the incident involving Schmehl. The hearing examiner's decision, adopted by the Board, however did not use this other arbitration award as a basis for its determination but merely considered it as evidence for the limited purpose of establishing that a procedure had been established and implemented by the City whereby employees who were suspected of having an alcohol problem were offered the opportunity to take an alcohol test. The grievant in the other arbitration case apparently was not offered this opportunity; nor was Schmehl in this case. But, based at least in part on the City's failure to offer him the chance to take the test the grievant in the other arbitration case was reinstated. In the same vein, we disagree that the hearing examiner should have delayed his decision until the final outcome of an arbitration award involving

Schmehl's discharge.[3] It is solely within the Board's province to determine whether there has been a violation of Act 195. *Philadelphia Housing Authority v. Pennsylvania Labor Relations Board*, 75 Pa.Commonwealth Ct. 199, 461 A.2d 649 (1983).

*Philadelphia Housing* is instructive here. In that case the employees filed an unfair labor practice charge alleging that their employer and their union had unlawfully withheld union dues from their wages after the employees had submitted dues revocation and membership resignation forms. What precipitated the employees' resignations was the expiration of the collective bargaining agreement. Thereafter, the employer, during the course of negotiations, learned that another union was seeking to displace the first one whereupon the employer, while continuing to withhold union dues, declined to forward them to the union. The union submitted a grievance to arbitration seeking to compel the employer to remit dues pursuant to the collective bargaining agreement. The arbitrator found that the collective bargaining agreement had *not* expired and directed employer to forward the collected dues to the union. Subsequently, the Pennsylvania Labor Relations Board, in its unfair practice charge proceedings found (contrary to the arbitrator's decision in the grievance proceedings) that the collective bargaining agreement *had* expired and that the employer and the union had committed an unfair labor practice and ordered the employer to pay back to the employees the dues wrongfully withheld from them. The employer appealed to this Court and argued that the Board committed error in retrying or disregarding an arbitration award. We held:

What proves to be fatal to [the employer's] argument is the fact that the [Board] in this case was not reviewing an arbitration award, but rather was ruling upon an entirely separate proceeding; the unfair labor practice charge brought by the employes of [the employer]

---

**3.** The briefs advise us that an arbitrator ordered Schmehl to be reinstated, the common pleas court reversed, and an appeal is apparently pending in this Court.

against [the employer]. Solely because there existed a factual determination relevant to both the arbitration and the unfair [labor] practice proceedings, does not render the unfair [labor] practice proceedings a review of the arbitrator's decision. The difficulties [the employer] might have had in reconciling the arbitrator's award with the [Board's] resolution of the unfair [labor] practice charges, cannot take precedence over Section 1301 of [Act 195], 43 P.S. § 1101.1301, which grants the [Board] exclusive jurisdiction to hear unfair labor charges.

*Philadelphia Housing,* 75 Pa.Commonwealth Ct. at 202–03, 461 A.2d at 650 (footnote omitted).[4] It is clear under *Philadelphia Housing* that whether or not Schmehl was terminated for just cause under the existing collective bargaining agreement is not determinative of whether his rights under Act 195 have been violated and, inconsistent remedies under Act 195's different proceedings is no basis for reversal. Accordingly, there was no reason for the hearing examiner to defer his decision.

The City also argues that the hearing examiner ignored its evidence. What it is really saying, however, is that the hearing examiner chose to credit testimony of the Union's employees and looked askance at certain evidence presented by the City. This is not a basis for reversal.

 Finally, the City argues that because the Pennsylvania Unemployment Compensation Board of Review found that there was a basis to deny Schmehl benefits for willful misconduct and in other litigation the Court of Common Pleas of Berks County in reviewing an arbitrator's order found just cause for Schmehl's termination, the Board's order must be reversed. But, the issues in those cases did not concern whether there was a violation of Section 1201(a) of Act 195 and, as previously noted, no collateral estoppel argument has been made by the City.

4. While the inconsistent remedies in both *Philadelphia Housing* and the instant case could arguably have been avoided by the raising of a successful collateral estoppel defense, this defense was not raised in either case.

The Board found that a violation of Section 1201(a) existed. Its findings are based upon substantial evidence. Its credibility decisions when so based cannot be reversed. Thus, the City's position cannot be successful.

Affirmed.

## ORDER

NOW, December 29, 1989, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby affirmed.